UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED SERVICE AND ALLIED WORKERS
OF RHODE ISLAND,

      Plaintiff,

      v.                                                  C.A. 1:24-cv-00383-JJM-PAS

BROWN UNIVERSITY,

      Defendant.

### UNITED SERVICE AND ALLIED WORKERS OF RHODE ISLAND'S CROSS-MOTION FOR SUMMARY JUDGMENT, OBJECTION TO BROWN'S MOTION FOR SUMMARY JUDGMENT MOTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff United Service and Allied Workers of Rhode Island ("USAW" or "Union") hereby files this Cross-Motion for Summary Judgment and objection to Defendant's Motion for Summary Judgment. In support thereof, Plaintiff relies on the attached Statement of Undisputed Facts and the arguments below.

    I.    **FACTS AND TRAVEL**

USAW and Brown University ("Brown") are parties to a collective bargaining agreement ("CBA") governing terms and conditions of employment for certain full-time and regular part-time building service employees of Brown University, including burner technicians, for the period October 13, 2021 to October 12, 2024. See Plaintiff's Statement of Undisputed Facts ("PSUF's") at ¶ 1. On September 10, 2021, Brown terminated the employment of Brian Amadon ("Amadon" or "Grievant"), a burner technician covered under the CBA. Id. at ¶ 4. USAW filed a grievance, alleging that the termination was without just cause and, as a result, violated the CBA. Id. at ¶ 5. Brown denied USAW's grievance and the matter proceeded to arbitration before John Hanson ("the Arbitrator") on May 7, 2024. Id. at ¶ 6. Both USAW and Brown were represented by

1

counsel. The hearing was transcribed. Id. at ¶ 10. At hearing, the parties stipulated to an arbitration issue: "Was the Grievant terminated without just cause. If so, what shall be the remedy?" Id. at ¶ 11. By award dated August 9, 2024 ("Award"), Arbitrator Hanson determined that Brown "did not have just cause to terminate the Grievant's employment for the events of July 14, 2021." Id. at ¶ 16. The Arbitrator ordered: Grievant "is to be reinstated and made whole in all ways." Id. at ¶ 17.

Brown has refused to reinstate Mr. Amadon. Id. at ¶ 18. USAW filed the instant Petition to Confirm and Enforce the Award under Section 301 of the Labor Management Relations Act ("LRMA"), 29 U.S.C. §185.[1] Following the filing of the instant Petition, Brown filed a Counterclaim seeking to vacate the Award. According to the Counterclaim, the Arbitrator manifestly disregarded the law by failing "to consider Brown's legal argument applicable to the dispute, and failing to conduct any legal analysis with respect to the resolution of the dispute."

On March 21, 2025, Brown filed a Motion for Summary Judgment. Plaintiff now files this Objection to Brown's Motion and Cross-Motion for Summary Judgment in favor of USAW.

## II. THE PARTIES' STATEMENTS OF UNDISPUTED FACTS

Pursuant to Local Rule 56(a)(2), Plaintiff has submitted a separate Statement of Undisputed Facts, which is incorporated herein. Defendant failed to submit a separate Statement of Undisputed Facts, in violation of LR cv 56(a)(2). Further, the seventy-five (75) paragraphs of "facts" it lists in its Memorandum are, by and large, either not material to the issue before the Court or are not facts, but argument. See e.g., Defendant's Motion for Summary Judgment ("DMSJ") at ¶¶ 68-73. Moreover, many of the citations in support of Defendant's "Statement of

---

[1] Because this dispute involves the assertion of rights under a collective bargaining agreement, this Court's analysis is governed by section 301 of the LMRA, 29 U.S.C. §185, not the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

2

Undisputed Fact" are to the evidence presented against Amadon in the criminal case, <u>much of which was found to lack credibility by the Superior Court</u>.  That evidence was already presented to the Arbitrator, already disputed by Plaintiff in its post-arbitration brief, and, by and large, rejected by the Arbitrator.  Plaintiff should not be required to produce evidence contesting "facts" already rejected by the Arbitrator.

Thus, the only facts that matter to this case are the findings of fact made by the Arbitrator.[2] Those findings are contained in the Award, Doc. 15-3, and are summarized below.

1. "The Employer in making its case … relied heavily on the Testimony of Mr. Griffin, and video footage from the University's security camera." Doc. 15-3, p. 7.

2. Mr. Griffin's testimony was not credible. "In his initial report to the police he made no mention of a Jack Daniels sticker.  It was only after Mr. Griffin's initial report, after he had see[n] photos of the motorcycle with the Jack Daniels sticker, did he mention it in his testimony." Id. at p. 8.

3. "The videos of the motorcycle leaving the Lloyd Avenue parking lot had no time stamps, and it could not be proven to have been taken on July 14, 2021." Id.

4. The only direct evidence presented at hearing "that the Grievant was the driver of that motorcycle was the testimony of one individual who saw someone wearing a "predator" helmet take a turn and accelerating at great speed, strike an individual in the

---

[2] As discussed below, this Court's review of an arbitration award under the LMRA is "very limited." *Garvey*, 532 U.S. at 509.  It is "therefore **not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors** or misinterprets the parties' agreement, but [may] inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement. Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, courts are not permitted to substitute their own." *NFL Mgmt. Council v. NFL Players Ass'n,* 820 F.3d 527, 536 (2d Cir. 2016), citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987) (emphasis added).

road and refuse to stop…. Identifying a motorcycle driver by the type of helmet he wore without other *credible evidence* does not by a "preponderance of evidence" prove that the Grievant was driving and was responsible for the accident of July 14, 2021." Id. at p. 8 (emphasis added).

### III. STANDARDS

#### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Federal Rules of Civil Procedure provides the entry of summary judgment where "the pleadings….together with the affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Material facts are those that have the potential to affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 243, 248 (1986).

Because this Court's review is confined to the record before the Arbitrator, and the Court is not permitted to disturb the Arbitrator's findings of fact, this matter is ripe for summary judgment. The only issue before the Court, then, is whether the Arbitrator exceeded his authority in concluding that Brown lacked just cause to terminate Grievant's employment. If not, the Award must be confirmed and enforced.

#### B. Standard for Confirming a Labor Arbitration Award

Section 301 of the Labor Management Relations Act ("LMRA") vests federal district courts with jurisdiction to enforce collective bargaining agreements. 29 U.S.C. §185; *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448 (1957). Section 301 likewise vests courts with jurisdiction to enforce or vacate arbitration awards rendered pursuant to arbitration clauses of

4

collective bargaining agreements. *United Paperworkers Int'l. Union v. Misco, Inc.* 484 U.S. 29 (1987).

In Section 301 actions, the "judicial review of an arbitration award is among the narrowest known to the law." *Main Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees,* 873 F.2d 425, 428 (1st Cir. 1989). Any review is "extremely narrow and extraordinarily deferential." *Service Employees Int'l Union v. Local 1199, N.E.,* 70 F.3d 647, 651 (1st Cir. 1995). "Disputes that are committed by contract to the arbitration process almost always are won or lost before the arbitrator. Successful court challenges are few and far between." *Keebler Company v. Truck Drivers, Local 170,* 247 F.3d 8, 10 (1st Cir. 2001). Courts "shall uphold an arbitrator's interpretation of a contract so long as we can find *some plausible argument* that favors his interpretation." *Crafts Precision Ind. Inc. v. Lodge No. 1836, Int'l Ass'n of Machinists,* 889 F.2d 1184 (1st Cir. 1989) (emphasis added). A court "may not supplant the arbitrator's determination of the merits of a contract dispute, even if it finds that determination to be erroneous." *Labor Relations Division of Construction Industries of Massachusetts, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local #379,* 29 F. 3d 742, 745 (1st Cir. 1994).

Even in summary judgment cases, this highly deferential standard governs judicial review of arbitration awards. *El Dorado Technical Serv., Inc. v. Union General de Trabajodores de Puerto Rico,* 961 F.2d 317, 319 (1st Cir. 1992) (affirming enforcement of arbitration award on summary judgment).

This exceptionally limited judicial review of arbitration awards is based on fundamental principles of federal labor law and policy. In the "Steelworkers Trilogy,"[3] the Supreme Court established definitive standards for the enforcement of labor arbitration agreements and awards under Section 301. In doing so, the Court declared that the policies relating to ordinary commercial arbitration were inapplicable to labor arbitration, and held that national labor policy mandated special treatment and deference to arbitration. *Warrior and Gulf,* 363 U.S. at 577-78, 581.

Accordingly, in Section 301 of the Act, Congress authorized federal courts to fashion a body of federal common law in actions relating to labor arbitration in order to promote a national labor policy. *Id.; See also, Enterprise Wheel,* 363 U.S. at 596-99; *Lincoln Mills, supra.* The Court noted, in construing labor contracts, that "the labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts." *Warrior and Gulf,* 263 U.S. at 581. Accordingly, courts have no choice but to uphold an arbitration award "so long as it draws its essence from the collective bargaining agreement." *Enterprise Wheel,* 363 U.S. at 597. The Supreme Court admonished that a court may not set aside an award because "[it] merely disagree[s] with the arbitrator's construction of the collective bargaining agreement." *Id.* at 598.

"Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension and Welfare Funds v. Thalle/Transit Constr. Joint Venture*, No. 12-CV-5661, 2014 U.S. Dist. LEXIS 96351, 2014 WL 3529728, at *4 (E.D.N.Y. July 15, 2014) (quoting *New York Med. Ctr. of Queens*

---

[3] *United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 JJ.S. 592 (1960).*

6

*v. 1199 SEIU United Healthcare Workers E.*, No. 11-CV-4421, 2012 U.S. Dist. LEXIS 81973, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012)) (additional citation and internal quotation marks omitted). The Court's review of an arbitration award is "'severely limited' so as not to frustrate the goals of arbitration — namely to settle disputes efficiently and avoid long and expensive litigation." *Advanced Ready Mix*, 2013 U.S. Dist. LEXIS 25205, 2013 WL 685447, at *2 (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)); *see also D.H. Blair*, 462 F.3d at 110 ("[T]he court must grant the award unless the award is vacated, modified, or corrected.") (internal quotation marks and citations omitted).

As a result, the showing required to avoid summary confirmation of the award is very high. "**The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case**.'" *D.H. Blair*, 462 F.3d at 110 (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)) (emphasis added). Only a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award." *D.H. Blair*, 462 F.3d at 110 (internal quotation marks and citations omitted); thus, "in evaluating [a] petition to confirm the result of [an] arbitration, the Court need only ensure that the arbitrator had some grounds on which to grant the damages spelled out in the [a]ward." *Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage*, No. 07 CV 4211, 2008 U.S. Dist. LEXIS 85734, 2008 WL 4693533, at *5 (E.D.N.Y. Oct. 23, 2008). A court must confirm the award where "there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law." *Advanced Ready Mix*, 2013 U.S. Dist. LEXIS 25205, 2013 WL 685447, at *3 (citation omitted); *see also Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) ("Generally speaking, unless the award is procured through fraud

7

or dishonesty, the decision should not be disturbed.") (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)).

Defendant seeks to vacate the Award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). The LMRA, rather than the Federal Arbitration Act ("FAA") governs actions involving "contracts of employment of . . . workers engaged in foreign or interstate commerce." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008); 9 U.S.C. § 1; 29 U.S.C. § 185. The FAA governs arbitration awards in commercial disputes and provides specific statutory grounds for vacating an award under Section 10, such as corruption, fraud, evident partiality, arbitrator misconduct, or exceeding arbitral authority. See *Int'l Chem. Workers Union, Local 683c v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003) ("The LMRA applies to CBAs and the FAA applies to individual arbitration agreements. It is undisputed that the LMRA is applicable to this case.").

Yet, federal courts enforcing labor arbitration awards look to the FAA "to guide the development of rules of federal common law to govern such disputes pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." *Supreme Oil*, 568 F. Supp. 2d at 406; *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 40 n.9, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) (stating that "[t]he [Federal] Arbitration Act does not apply to 'contracts of employment of . . . workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act 1947, 61 Stat. 156, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization" under the federal labor laws."); *see also Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, No. 07-CV-2005, 2007 U.S. Dist. LEXIS

39116, 2007 WL 1580085, at *1 (E.D.N.Y. May 30, 2007) (confirming an arbitration award under the LMRA and explicitly looking to the procedure for confirming an arbitration award under the FAA).

Vacating an award under either the LMRA or the FAA presents "a high hurdle." *See Stolt-Nielsen*, 559 U.S. at 671 ("It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.") (internal quotation marks and citations omitted).

IV. ARGUMENT

A. **The Award Must Be Confirmed Because It Does Not Exceed The Arbitrator's Jurisdiction, Nor Is It Otherwise Contrary To Law.**

The Award was made following a transcribed arbitration hearing where both parties were represented by legal counsel. The parties stipulated to the following issue: "Was the Grievant terminated without just cause. If so, what shall be the remedy?" PSUF at ¶ 11. The Arbitrator concluded that the weight of the evidence presented by Brown at the arbitration hearing did not support Brown's argument that Amadon was the driver of the motorcycle involved in the accident on July 14, 2021. Once that decision was made, no other argument mattered. It was unnecessary for the Arbitrator to specifically address Brown's argument that it conducted a fair investigation, just as it was unnecessary for him to address the Union's argument that off-duty conduct cannot be a basis for discharge. The Arbitrator's decision that Grievant should be reinstated <u>if he did not do the thing he was accused of doing</u> is consistent with decades of labor arbitration jurisprudence.[4] As such, the Award does not exceed the Arbitrator's jurisdiction, nor is it contrary to law.

---

[4] A fundamental requirement of just cause is that the employer must prove the employee committed the offense alleged. If the employer fails to provide sufficient evidence to support the claim, the discipline imposed must be negated. *See e.g., Enterprise Wire Co.*, 46 LA 359 (Daugherty 1966); *Clermont County Sheriff*, 125 LA 592, 599-600 (Arb. 2008); *see also* Koven & Smith, *Just Cause: The Seven Tests* (1997).

9

Further, the parties' CBA provides, "the decision of the arbitrator shall be final and binding, except that the arbitrator shall have no authority to add to, subtract from, change or disregard any of the terms or provision of the Agreement."  Doc. 15-5 at p. 13.  Defendant has not argued that the Arbitrator changed or disregarded any of the terms of the CBA.  Article III of the CBA permits Brown to discharge or suspend an employee, but only for "just cause."  The Arbitrator weighed the evidence presented and concluded that terminating an employee for an offense he did not commit does not constitute "just cause" within the meaning of the CBA.  Because the Award clearly draws its essence from the CBA, it must be affirmed and enforced.  *See Enterprise Wheel,* 363 U.S. at 597.

### B. The Arbitrator Did Not Exceed His Authority Nor Manifestly Disregard The Law.

As noted above, the standard for vacating a labor arbitration award under Section 301 of the LMRA is exceedingly narrow and highly deferential to the arbitrator's decision. Courts will vacate an arbitration award only in exceptional circumstances, such as when the award does not "draw its essence" from the collective bargaining agreement (CBA), the arbitrator exceeds the scope of their authority, the award is contrary to public policy, or the award is procured by fraud.

"Outside of these limited areas, the arbitration award must be confirmed, **even in the face of errors by the arbitrator in factual findings** or his interpretations of the law.  The district court does not sit to hear claims of factual or legal error by an arbitrator as if it were an appellate court reviewing a lower court's decision." *Kalmar Indus. USA LLC v. Int'l Bhd. of Teamsters Local 838*, 452 F. Supp. 2d 1154, 1158-1159 (D. Kan. 2006) (emphasis added).  This principle is rooted in the understanding that the parties have agreed to accept the arbitrator's view of the facts and the meaning of the contract, as long as the arbitrator is acting within the scope of his authority and the award draws its essence from the contract.

Defendant offers two arguments in support of its petition to vacate the Award. In doing so, it erroneously cites to the wrong statute. See DMSJ, p. 21. But, under either the FAA, 9 U.S.C. § 10(a)(4), or the LMRA, 29 U.S.C. §185 (the correct statute), Defendant cannot carry the very heavy burden of convincing the Court to vacate a labor arbitration decision.

1. ***The Arbitrator did not exceed his authority when he made a factual determination that Brown failed to carry its burden of proving that Grievant was the driver of the motorcycle.***

In seeking to vacate the arbitrator's award, Brown effectively invites this Court to second guess the arbitrator's factual findings. However, this Court's review of an arbitration award under the LMRA is "very limited." *Garvey*, 532 U.S. at 509. It is "therefore not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement, but [may] inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement. Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, courts are not permitted to substitute their own." *NFL Mgmt. Council v. NFL Players Ass'n,* 820 F.3d 527, 536 (2d Cir. 2016), citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987). It is the arbitrator's construction of the contract and assessment of the facts that are dispositive, "however good, bad, or ugly." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2071, 186 L. Ed. 2d 113 (2013). This court does not have license to question the weight the Arbitrator gave to the evidence. *Hewlett v. IBM*, 636 F. Supp. 3d 260, 265 (D. Mass. 2022), *citing Dialysis Access Ctr.*, 932 F.3d at 10-11 ("What DAC's gripe really comes down to is the weight given to that evidence by the arbitrator. And on that front we have made pellucid that it is not our place to chime in on the weight allotted to any given piece of evidence submitted to the arbitrator."). *See also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510, 121 S.

11

Ct. 1724, 1728 (2001) (finding the Court of Appeal's decision vacating an arbitration award "nothing short of baffling. The substance of the Court's discussion reveals that it overturned the arbitrator's decision because it disagreed with the arbitrator's factual findings, particularly those with respect to credibility.").

Defendant argues that the arbitration decision includes no "discernable analysis under the preponderance of the evidence standard, and incredibly, no mention whatsoever of the evidence adduced at the arbitration hearing, except to note that Mr. Griffin was the only eyewitness to testify at the arbitration hearing." See DMSJ, p. 22. However, the Arbitrator succinctly noted:

> Regardless of what definition is used to describe just cause, they all start with existence of sufficient proof that the employee engaged in the conduct for which he or she was disciplined. In this case, that is, did the Employer prove the Grievant was responsible for the hit and run accident that occurred on July 14, 2021?

Doc. 15-3 at p. 7. The Arbitrator concluded that Brown failed to prove by a preponderance of the evidence that Grievant was driving and was responsible for the accident of July 14, 2021. In concluding that Brown failed to carry its burden, the Arbitrator considered the Union's post-arbitration brief that outlined the numerous witness contradictions in both the criminal trial[5] and in Mr. Griffin's testimony at the arbitration hearing. See Exhibit 4 at pp. 10-16. Brown argues in its Memorandum of Law in Support of Summary Judgment that because Mr. Griffin testified "without contradiction or cross examination," the Arbitrator was required to conclude he was telling the truth. See p. 22. He wasn't; and he didn't. The Arbitrator had the benefit of the criminal trial transcript (where Mr. Griffin was cross-examined), the Union's brief, which pointed out the contradictions in Mr. Griffin's testimony, *and* he was able to personally observe Mr. Griffin during

---

[5] Brown agreed to include the transcript of the criminal trial and all exhibits as full exhibits in the arbitration hearing. Because the Arbitrator only personally observed one witness, Mr. Griffin, the Union argued that the Arbitrator should defer to the findings of fact made by the Superior Court as to credibility determinations. See Ex. 4 at pp. 15-16.

12

his testimony. The Arbitrator was well-within his right to conclude that Mr. Griffin's testimony did not establish that Mr. Amadon was the driver of the motorcycle that struck a pedestrian. Brown's assertion that the Arbitrator refused to consider evidence is incorrect.[6] Although the Arbitrator has no obligation to mention every piece of evidence presented by the parties in his decision, the Arbitrator did, in fact, reference Mr. Griffin's testimony: "[i]n his initial report to the police he made no mention of a Jack Daniels sticker. It was only after Mr. Griffin's initial report, after he had see[n] photos of the motorcycle with the Jack Daniels sticker, did he mention it in his testimony." Doc. 15-3 at p. 8. Thus, the only direct evidence presented at hearing "that the Grievant was the driver of that motorcycle was the testimony of one individual who saw someone wearing a "predator" helmet take a turn and accelerating at great speed, strike an individual in the road and refuse to stop…. Identifying a motorcycle driver by the type of helmet he wore without other ***credible evidence*** does not by a "preponderance of evidence" prove that the Grievant was driving and was responsible for the accident of July 14, 2021." Id. at p. 8 (emphasis added).

Brown's assertion that the Arbitrator failed to consider and weigh the evidence before him has no support in the record. In presenting its case before the Arbitrator, Brown chose to introduce the entire trial transcript of the criminal proceedings <u>where Amadon was found not guilty</u>. It introduced the Superior Court's decision in the criminal proceedings, finding:

> However on the issue of identifying and establishing Mr. Amadon as the operator of the motorcycle that collided with Ms. Nagle, **the evidence is a combination of**

---

[6] As such, *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985) is inapposite. There, the arbitrator refused to give the transcript of the criminal trial any weight in rendering his award, and concluded that the Company had failed to submit sufficient evidence to prove that the Company was justified in dismissing the grievant. Here, the Arbitrator *did* consider the transcript, noting, "we have a unique opportunity to look at this case, not only through the testimony and evidence presented at the arbitration hearing, but through a Superior Court judgment that dismissed charges against the Grievant, the transcript of that case was accepted as Joint Exhibit 6." Doc. 15-3, p. 7.

13

> **poorly documented and poor quality video surveillance clips, three statements that are highly inconsistent and contradictory with each [other].**

Doc. 15-5 at p. 334 (emphasis added). The Arbitrator had the benefit of reviewing the criminal trial transcript, which included cross-examination of witnesses to the event, and the Superior Court Judge's assessment of the credibility of those witnesses. It is not clear whether the Arbitrator merely deferred to the Superior Court's credibility determinations, or made his own determinations based on the transcript. Either conclusion would have been permissible.[7]

Brown had every opportunity to present live testimony from the witnesses that testified at the criminal trial, but, except for Mr. Griffin, it chose not to.[8] It cannot now argue that the Arbitrator was required to accept as fact the testimony that supported Amadon's guilt from the criminal trial, but disregard all the evidence that undermined that testimony.[9]

Finally, Brown's assertion that the Arbitrator applied an adverse inference against Brown has no support in the record. See DMSJ, p. 24, fn. 4.

---

[7] Although, as the Union argued in its post-arbitration brief, the Arbitrator should have deferred to the Court's credibility determinations, since the Court, and not the Arbitrator, was able to observe the witnesses during their testimony. See Exhibit 4, pp. 15-16. Absent overwhelming evidence, arbitrators have concluded there is no basis for overturning the essential findings of the criminal court. *See e.g.*, 2009 AAA LEXIS 1412, *75-76. An arbitrator's role is to defer to the findings of the criminal court unless he is "convinced by the overwhelming weight of the evidence, *particularly new evidence*, that the Court somehow erred in its findings…" *Id.* (emphasis added). Because Brown has offered no new evidence on the matter, and largely deferred to the testimony and evidentiary record of the criminal court, the Arbitrator should defer to the findings of the criminal court.

[8] Further, as noted by the Arbitrator, Mr. Griffin only "remembered" that the motorcycle he allegedly witnessed had a Jack Daniels sticker on it *after* he was shown a photo of Mr. Amadon's motorcycle with a Jack Daniels sticker on it. Doc. 15-3, p. 8.

[9] Notably, in Brown's post-arbitration brief, it argued, "the criminal proceeding and its result have no bearing on the Arbitrator's considerations or discretion in this case." See Doc. 15-2, p. 30, fn. 78. If that was the case, Brown should have presented its own evidence to support its decision to terminate Grievant's employment. Instead, it relied on the transcript of the trial where Grievant was found not guilty.

2. ***The Arbitrator did not disregard the law by failing to acknowledge or consider Brown's legal argument.***

Brown argues that the Arbitrator ignored its argument that "Mr. Amadon's failure to participate in Brown's investigation into the hit-and-run" should result in an adverse inference against him. See DMSJ, p.25. First, the Arbitrator *did* acknowledge Brown's argument that Grievant "refused to cooperate with the investigation." See Doc. 15-3 at p. 4. But, Brown did not argue at hearing, or in its post-hearing brief, that it had cause to terminate Amadon for his alleged failure to participate in the investigation. But, had Brown argued that (notwithstanding Amadon's innocence) his termination should be upheld due to his alleged failure to participate in Brown's investigation on the advice of his attorney, the Arbitrator would have been correct to reject that argument. Brown did not terminate Amadon for failing to participate in an investigation. Brown terminated Amadon because it concluded he was involved in a hit-and-run accident. See PSUF, ¶ 6. Since the Arbitrator concluded that the reason provided by Brown for the termination lacks merit, Amadon's alleged failure to participate in the investigation is irrelevant.

Brown *did* argue in its post-hearing brief that "arbitral law *permits* the Arbitrator to draw a negative inference against Grievant" if he fails to testify in his own defense at hearing. Doc. 15-2, p. 28 (emphasis added).[10] That is a correct statement of law.[11] The Arbitrator is, indeed, permitted to draw an adverse inference against Grievant for failing to testify. It is not clear from the decision whether the Arbitrator did so. Perhaps he did and found that, even with the adverse

---

[10] Brown also argued that Grievant had no valid excuse to "refuse to testify" in this matter. See Doc. 15-2, p. 29. However, there is nothing in the record that indicates that Grievant refused to testify. Brown could have called Grievant as an adverse witness. It did not.

[11] Brown's argument in its memorandum to this Court that it cited arbitral law and argued to the Arbitrator that he was "required" or "mandated" to make "an adverse inference against Mr. Amadon" is not accurate. See DMSJ, pp. 18 and 25. The cases cited by Brown **permit**, but do not **require**, an adverse inference.

15

inference, Brown failed to carry its burden.  Or, perhaps he found the Union's argument compelling:

> Brown may argue that Grievant's lack of testimony is indicative of his guilt. However, a grievant need not testify **if the employer fails to prove its case**.  Here, Brown offered no new evidence **and relied on the Superior Court transcript and decision that found Amadon not-guilty**.  Further, as discussed below, there was no evidence provided that a newspaper article from nearly four years ago identifying Amadon's arrest had any affect on Amadon's ability to perform his job, or Brown's reputation.  Thus, there was no reason for Amadon to testify.

See Exhibit 4 at p. 16, fn. 5.  Either way, because the Arbitrator was not required to draw an adverse inference from Grievant's failure to testify, the Arbitrator's failure to do so was not contrary to law.

### C. THE UNION IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES BECAUSE BROWN'S FAILURE TO COMPLY WITH THE AWARD IS FRIVOLOUS, UNREASONABLE AND WITHOUT FOUNDATION

"Under federal common law, a court may award fees and costs to the winning party in a section 301 action if the losing party's position was 'frivolous, unreasonable, or without foundation.'" *Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc*., 464 F.3d 93, 100 (1st Cir. 2006) (quoting *Local 285, Serv. Empls. Int'l Union AFL-CIO v. Nonotuck Res. Assoc., Inc*., 64 F.3d 735, 737 (1st Cir. 1995)).  Thus, a "court has discretion 'to award attorney fees to the prevailing party when the losing party litigated the matter despite the fact that it was unable to present any rational arguments in support of its position.'" *Painters and Allied Trades Dist. Council No. 35 v. Ipswich Bay Glass Co*., No. 03-11794, 2004 U.S. Dist. LEXIS 10022, 2004 WL 1212078, at *7 (D. Mass. June 2, 2004) (quoting *Int'l Ass'n of Heat & Frost Insulators v. Thermo-Guard Corp*., 880 F. Supp. 42, 48 (D. Mass. 1995)); *see also W. Mass. Elec. Co. v. IBEW*, No. 11-30106-DPW, 2012 U.S. Dist. LEXIS 139068, at *24-25 (D. Mass. Sep. 27, 2012) (courts have the equitable power to award fees in cases to enforce arbitration awards); *Aggregate Indus. N.E.*

*Region, Inc. v. Teamsters Local Union No. 42*, 762 F. Supp. 2d 285, 298 (D. Mass. 2010) (citing Fairweather's Practice & Procedure in Labor Arbitration 641).

Defendant failed to comply with a run-of-the-mill arbitration award requiring reinstatement and make-whole relief. It was only after Plaintiff filed the instant Petition to Confirm and Enforce the Award that Defendant filed a counterclaim to vacate the award. As established above, its arguments in support of its Petition are frivolous, unreasonable, and without foundation. Indeed, the arguments are contrary to decades of well-established jurisprudence. The one case Defendant cited in support of its Petition was factually and legally inapposite. See p. 13, at fn. 6, *supra*. Consequently, Defendant should be ordered to reimburse the Union's reasonable attorneys' fees spent in enforcing the Award and defending against Brown's frivolous Petition.

Respectfully submitted,

USAW,

By its Attorney,

/s/ Elizabeth Wiens
Gursky Wiens & Shanley,
Attorneys at Law, Ltd.
20 Centerville Road, Warwick RI
Tel.401.294.4700
Fax 401.294.4702
ewiens@rilaborlaw.com

**CERTIFICATION OF SERVICE**

I hereby certify that, on April 11, 2025, I caused the foregoing document to be served on counsel of record via this Court's CM/ECF system.

/s/ Elizabeth Wiens